IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ARNOLD HARMS, JR.,<br>TDCJ-CID # 1211789,<br>            Petitioner, | §<br>§<br>§<br>§ | |
| v. | § | C.A. NO. C-06-440 |
| | § | |
| NATHANIEL QUARTERMAN,<br>DIRECTOR, TDCJ-CID,<br>            Respondent. | §<br>§<br>§<br>§ | |

**MEMORANDUM AND RECOMMENDATION
TO GRANT RESPONDENT'S MOTION FOR SUMMARY JUDGMENT**

Petitioner is an inmate in the Texas Department of Criminal Justice,

Correctional Institutions Division ("TDCJ-CID"), and currently is incarcerated at

the Terrell Unit in Rosharon, Texas.  Proceeding pro se, petitioner filed this habeas

corpus petition pursuant to 28 U.S.C. § 2254 on September 1, 2006.  (D.E. 1).  On

December 6, 2006, respondent filed a motion for summary judgment arguing that

petitioner has failed to demonstrate that he is entitled to habeas relief.  (D.E. 16, at

1).  Petitioner filed a response on February 5, 2007, which contains a request for an

evidentiary hearing.  (D.E. 31, at 4).  On March 6, 2007, respondent filed a

supplemental brief addressing claims that were not raised in the petition, but raised

in petitioner's traverse and response.  (D.E. 35).  For the reasons stated herein, it is

respectfully recommended that the respondent's motion for summary judgment be

granted, and that petitioner's request for an evidentiary hearing be denied.

## I. JURISDICTION

The Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. § 2254, which provides that jurisdiction is proper where the inmate is confined, or where the conviction was obtained.  Wadsworth v. Johnson, 235 F.3d 959, 961-62 (5th Cir. 2000).  Petitioner was convicted by the 319th Judicial District Court of Nueces County, Texas, and therefore, jurisdiction is proper in this Court.

## II. BACKGROUND

**A.     Procedural Background.**

Respondent has lawful custody of petitioner pursuant to a judgment and sentence of the 319th Judicial District Court of Nueces County, Texas, in cause number CR-03-2046-G, styled State of Texas v. Arnold G. Harms.  Ex parte Harms, App. No. WR-63,249-01, at 106.  In November 2003, a jury found him guilty of burglary of a habitation with commission of a felony and injury to an elderly individual.  Id.  He received a fifteen-year sentence for injury to an elderly person, and a ten-year sentence for burglary of a habitation, which was probated for ten years.  Id.

On August 4, 2005, the Thirteenth Court of Appeals affirmed petitioner's

2

conviction.  <u>Harms v. State</u>, No. 13-03-00744-CR, slip op. (Tex. App. 2005).  He did not file a petition for discretionary review with the Texas Court of Criminal Appeals.  On September 21, 2005, he filed a state application for writ of habeas corpus.  <u>Ex parte Harms</u>, App. N. WR-63,249-01, at 2-35.  On August 9, 2006, the Texas Court of Criminal Appeals denied his application without written order on the findings of the trial court.  <u>Id.</u> at cover.  On September 6, 2006, he filed this petition to challenge his conviction.  (D.E. 1).

**B.      Factual Background.**

The incident leading to petitioner's conviction followed a series of problems between petitioner and his ex-wife, Elinor McCoin, who testified that she and petitioner married in 1979, and divorced in 1993, while living in Colorado.  <u>State of Texas v. Arnold G. Harms</u>, Cause No. CR-03-2046-G, at Reporter's Record, vol. 3, at 138.[1]  In 1998, after she and petitioner had, at separate times, moved to Texas, she moved into petitioner's house.  <u>Id.</u> at 139.  She moved out in 2001.  <u>Id.</u> She then became involved in a serious relationship with Gerald Kipp, the victim. <u>Id.</u> at 138-39.  Although she and petitioner had parted ways, he began calling her, writing her letters, and dropping by her residence.  <u>Id.</u> at 142-44.  She obtained a

---

[1] The Reporter's Record will be designated as "R.R." with the volume number preceding it and the page numbers following the designation.

3

protective order to keep him from contacting her, but testified that he repeatedly violated the protective order.  Id. at 145.  The record contains many letters that petitioner wrote his ex-wife, which reflect that before the protective order, he apparently wrote her lengthy letters several times each week, detailing his feelings for her and his attempts to see her and win back her affections.  State v. Harms, Cause No. CR-03-2046-G, State's Ex. 17.

Corpus Christi Police Department records reveal that on February 14, 2003, Ms. McCoin stated that petitioner's friend El Byrom "found [him] in a drunken [] condition making threats of violence to El, himself, and Gerald [Kipp], and [McCoin]."  Ex parte Harms, App. No. WR-63,249-01, at 65.  Petitioner had left a phone message stating "I'll destroy myself.  But I won't go down alone[;] others will be destroyed...."  Id. at 53.  He made other threats at that time, including that "if he could not have her no one [could]," and "if I have to die you will not live either."  Id.

Petitioner was hospitalized for mental illness.  5 R.R. 27.  He was diagnosed "as having a mood disorder, secondary to a medical condition, with psychotic feature."  Id.  At the time, he was taking medication to treat prostate cancer, thyroid problems, diabetes and back pain.  Id. at 22.  His medications included OxyContin

4

and morphine.[2]  Id.  Dr. Raul Capitaine, a psychoanalyst who testified at trial in

support of the defense, stated that in an older person, such as petitioner, who was

74 at the time of the incident leading to his arrest, OxyContin may contribute to

agitation, amnesia, depression, and emotional liability.  Id. at 22-23.  While

petitioner was hospitalized, Ms. McCoin went to his house and took a pistol.  Ex

parte Harms, App. No. WR-63,249-01, at 68.  She told police that she took it to

keep petitioner from causing her harm, and turned the firearm over to the police.

Id.  Petitioner attempted to get the gun back from the police, but the police would

not return the gun to petitioner because of the protective order.  4 R.R. 33.

Petitioner testified that late in the evening of June 13, 2003, he entered Mr.

Kipp's home through a side door.  Id. at 120.  He had with him a backpack.  Id.  He

proceeded upstairs to Mr. Kipp's bedroom, where he saw Mr. Kipp and Ms.

McCoin, the woman he said he believed to be his wife, asleep on the bed.  Id. at

121.  Petitioner testified that he turned and ran downstairs, and does not remember

anything that occurred after that point.  Id. at 122.  He claims that he does not

know what happened.  Id. at 124.

Ms. McCoin testified that she awakened to see petitioner in Mr. Kipp's

---

[2] OxyContin is the trademark name "for a preparation of oxycodone hydrocholoride."
Dorland's Illustrated Medical Dictionary 1298 (29th ed. 2000).  Oxycodone hydrochloride is an
analgesic derived from morphine.  Id.

bedroom, holding a butcher knife over Mr. Kipp as he slept.  3 R.R. 155-56.  She

briefly left the room, believing petitioner would try to kill her as well, but went

back when Mr. Kipp called for her help.  Id. at 156-57.  She testified that petitioner

was on top of Mr. Kipp holding the knife to his throat.  Id. at 157.  She shoved him

away from Mr. Kipp and the two began fighting.  Id.  She ran from the room and

called the police.  Id.  She returned to help Mr. Kipp subdue petitioner until police

arrived, and hit petitioner with table legs that she found underneath the bed.  Id. at

158.

Mr. Kipp testified that he awoke to see petitioner coming at him with a

butcher knife.  3 R.R. 25.  He testified that he raised his leg to stop him, and

received a wound to his calf.  Id.  He then grabbed a baseball bat and tried to fend

off petitioner, but had to drop the bat when petitioner began stabbing his hands and

body.  Id.  With Ms. McCoin's assistance, he was able to subdue petitioner until

police arrived.  Id. at 26-27.

Following petitioner's arrest, Dr. Capitaine examined him and determined

that he had an "adjustment disorder with mix anxiety and depression."  5 R.R. 27.

Dr. Capitaine testified that petitioner perceived himself still married to Ms.

McCoin.  Id. at 24.  He further explained that petitioner also suffered from

dissociative disorder, meaning that petitioner suffered a memory lapse at the time

of the crime, and that he did not know right from wrong at the time of the crime. Id. at 30-33.

Dr. Joel Kutnick testified for the state.  5 R.R. 68.  He interviewed petitioner on October 15, 2003.  Id. at 70.  He also reviewed Dr. Capitaine's report, the police and offense reports, the letters petitioner wrote to Ms. McCoin, and witness statements.  Id.  He diagnosed petitioner as depressed, and also gave him provisional diagnoses of malingering (lying), dissociative amnesia, and alcohol abuse.  Id.  He described dissociative amnesia as "a syndrome where, after a very emotionally traumatic event, the mind doesn't allow the person to remember the event ... but while the event is going on they have their full mental faculties."  Id. at 71, 73.  He stated that he did not know if petitioner's memory gap was due to dissociative amnesia or malingering.  Id. at 72.  Dr. Kutnick did not agree with Dr. Capitaine's diagnosis of petitioner as having an adjustment disorder, or being psychotic.  Id. at 74.  He testified that when he spoke with petitioner, he in fact knew that Ms. McCoin was his ex-wife.  Id. at 75.  Cross-examination of Dr. Kutnick revealed that his son is the Chief of the Misdemeanor Division of the District Attorney's Office, and that he nearly always testified in favor of the state. 5 R.R. 92-93.

### III.  PETITIONER'S ALLEGATIONS

Petitioner raises the following claims in his petition for habeas relief and subsequent  traverses:

(1)   He claims that he received ineffective assistance of counsel because his counsel:

    (a)   failed to impeach the testimony of Dr. Kutnick, (D.E. 1, at 7), (D.E. 24, at 16);

    (b)   had a conflict of interest, (D.E. 1, at 7);

    (c)   failed to detect perjured testimony, id., and particularly that counsel failed to properly investigate perjury by Dr. Kutnick and prepare an adequate defense, (D.E. 25, at 13-15);

    (d)   failed to interview police officers and call them as defense witnesses, (D.E. 24, at 13);

    (e)   failed to call Dr. Nestor Praderio as a witness, id.; and

    (f)   failed to call Captain McConnelly as a witness, id. at 16-17.

(2)   He claims that prosecutorial misconduct occurred because the state:

    (a)   suppressed exculpatory evidence, (D.E. 1, at 7), (D.E. 24, at 9-10); and

    (b)   introduced perjured testimony.  Id.

(3)     He claims that his ex-wife, Elinor McCoin, committed perjury, (D.E. 24, at 7).

## IV.  EXHAUSTION OF STATE REMEDIES

**A.     The AEDPA's Exhaustion of State Remedies Standard**.

A federal writ of habeas corpus from an inmate in state custody shall not be granted unless the inmate has exhausted his remedies at law in the state courts, or there is an absence of state court remedies or circumstances that render state remedies insufficient to protect the individual's rights.  28 U.S.C. § 2254(b)(1).

The exhaustion requirement ensures that state courts have an opportunity to consider federal law challenges to state custody before the federal courts can entertain such assertions.  Duncan v. Walker, 533 U.S. 167, 178-79 (2001).  The substance of a habeas petitioner's claim must have been "fairly presented" to state courts before being presented to the federal courts.  Nobles v. Johnson, 127 F.3d 409, 420 (5th Cir. 1997) (citing Picard v. Connor, 404 U.S. 270, 275 (1971)).  "[A] habeas petitioner fails to exhaust state remedies when he presents material additional evidentiary support to the federal court that was not presented to the state court."  Graham v. Johnson, 94 F.3d 958, 968 (5th Cir. 1996) (per curiam) (citation omitted).  If a claim is "in a significantly different and stronger evidentiary posture than it was before the state courts," then the exhaustion

requirement of § 2254(b) has not been met.  <u>Joyner v. King</u>, 786 F.2d 1317, 1320 (5th Cir. 1986).

However, where new information provided by petitioner "does not fundamentally alter" the claim, but supplements the record, it "does not place the claim [] in a significantly different legal posture."  <u>Morris v. Dretke</u>, 413 F.3d 484, 496 (5th Cir. 2005) (citation omitted).  In <u>Morris</u>, the Fifth Circuit found that while the petitioner's claim was "in a comparatively stronger evidentiary posture," this was mitigated in favor of exhaustion due to several factors, including a finding that petitioner's briefs in state court were detailed in both law and fact, the new evidence did not "fundamentally alter [the petitioner's] state claim," and nothing in the record indicated an "'attempt [] to expedite federal review by deliberately withholding essential facts from the state courts.'"  <u>Id.</u> (citations omitted).

Where a petitioner "fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,'" then the claims are procedurally defaulted.  <u>Nobles</u>, 127 F.3d at 420 (quoting <u>Coleman v. Thompson</u>, 501 U.S. 722, 735 n.1 (1991)).  Federal habeas relief may only be granted on procedurally defaulted claims if petitioner "can demonstrate cause for default and actual prejudice as a result of the alleged violation of federal law or

demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." <u>Moawad v. Anderson</u>, 143 F.3d 942, 947 (5th Cir. 1998) (citation omitted).  A claim is procedurally barred from federal habeas review if the petitioner would be precluded from exhausting the same claim in state court pursuant to the Texas abuse of the writ doctrine.  <u>Horsley v. Johnson</u>, 197 F.3d 134, 136-37 (5th Cir. 1999).

Finally, a writ of habeas corpus may be denied on the merits regardless of whether petitioner exhausted his state remedies.  28 U.S.C. § 2254(b)(2).

**B.     Petitioner's Exhausted Claims.**

Respondent concedes that petitioner has properly exhausted his claims that the prosecution allowed perjury and suppressed favorable evidence, and that his counsel rendered ineffective assistance by failing to properly investigate perjury by Dr. Kutnick and prepare an adequate defense.  <u>See</u> (D.E. 35, at 3).  Respondent also concedes that petitioner properly exhausted his claim that counsel had a conflict of interest.  <u>See</u> (D.E. 16, at 13).

**C.     Petitioner's Unexhausted Claims.**

Respondent contends that the following of petitioner's claims are unexhausted and procedurally defaulted:

(1)     petitioner's claim that Elinor McCoin committed perjury;

11

(2)     petitioner's claim that counsel failed to properly interview the police

officers and call them as witnesses;

(3)     petitioner's claim that counsel failed to call Dr. Nestor Praderio as a

witness; and

(4)     petitioner's claim that counsel failed to properly cross-examine Dr.

Kutnick.

(D.E. 35, at 3).  Moreover, petitioner's state application for habeas relief

establishes that he claimed that the prosecution committed misconduct by

knowingly entering the perjured testimony of Dr. Kutnick; that the prosecution

suppressed favorable evidence, that counsel rendered ineffective assistance by

failing "to investigate and employ in his defense substantial material impeachment

evidence;" and that counsel had a conflict of interest.  Ex parte Harms, App. No.

63,249-01, at 2-35.  Petitioner's claim that Captain McConnelly should have been

called as a witness was also addressed in his state application for habeas relief.  Id.

at 42-43.

Pursuant to the Texas abuse of the writ doctrine, petitioner is now barred

from raising his remaining unexhausted claims in a state application for habeas

relief, and thus, his claims are procedurally defaulted.  Nobles, 127 F.3d at 420.

Petitioner has presented no reason why he did not raise the claims in his state

application for habeas relief, and has not shown that prejudice will result from this Court's denial of his claims as procedurally defaulted.

Accordingly, it is respectfully recommended that petitioner's claims that Elinor McCoin committed perjury, that his counsel should have interviewed and called police officers as witnesses, that his counsel failed to call Dr. Praderio as a witness, and that counsel failed to properly cross-examine Dr. Kutnick are unexhausted and procedurally defaulted.  Nevertheless, this Court may deny petitioner's claims on their merits.  28 U.S.C. § 2254(b)(2).

## V.  STANDARD OF REVIEW

**A.      Federal Habeas Corpus Standard of Review Pursuant to the AEDPA.**

A federal writ of habeas corpus is available to a state prisoner only if he is being held in violation of the Constitution, laws, or treaties of the United States. Boyd v. Scott, 45 F.3d 876, 881 (5th Cir. 1994) (per curiam).  Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which is applicable to habeas petitions filed after its effective date, "federal habeas relief is only merited where the state court decision is both incorrect *and* objectively unreasonable."  Morrow v. Dretke, 367 F.3d 309, 313 (5th Cir. 2004) (emphasis in original) (citing Williams v. Taylor, 529 U.S. 362, 411 (2000)); 28 U.S.C. § 2254(d)(1); see also Riddle v. Cockrell, 288 F.3d 713, 716 (5th Cir. 2002).  The

AEDPA's provisions "ensure that state-court convictions are given effect to the

extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002) (citation

omitted).

The Supreme Court has concluded that the "contrary to" and "unreasonable

application" clauses of 28 U.S.C. § 2254(d)(1) have independent meanings. Id. at

694 (citing Williams, 529 U.S. at 404-05). The Bell Court explained:

> A federal court may issue the writ under the "contrary to"
> clause if the state court applies a rule different from the
> governing law set forth in our cases, or if it decides a
> case differently than we have done on a set of materially
> indistinguishable facts. The court may grant relief under
> the "unreasonable application" clause if the state court
> correctly identifies the governing legal principles but
> unreasonably applies it to the facts of the particular case.
> The focus of the latter inquiry is on whether the state
> court's application of clearly established federal law is
> objectively unreasonable, and we stressed in *Williams*
> that an unreasonable application is different from an
> incorrect one.

Id. (citations omitted).

The Fifth Circuit has held that federal courts may not grant a writ of habeas

corpus merely on the finding of an error by a state court, but rather only where a

"state court arrives at a conclusion opposite to that reached by [the Supreme Court]

on a question of law or if the state court decides a case differently than [the

Supreme] Court on a set of materially indistinguishable facts." Hill v. Johnson,

14

210 F.3d 481, 485 (5th Cir. 2000) (citation omitted).  A federal habeas court is to

review only a state court's decision, and not the written opinion explaining its

decision.  Anderson v. Johnson, 338 F.3d 382, 390 (5th Cir. 2003).  The state

court's "ultimate decision" is to be tested for reasonableness, "not every jot of its

reasoning."  Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001). Furthermore,

a state court need not cite, or "even be aware of [Supreme Court] precedents, 'so

long as neither the reasoning nor the result of the state-court decision contradicts

them.'"  Mitchell v. Esparza, 540 U.S. 12, 16 (2003) (quoting Early v. Packer, 537

U.S. 3, 8 (2002)).

Absent a direct conflict with Supreme Court authority, habeas relief is only

available if a state court decision is unreasonable.  Montoya v. Johnson, 226 F.3d

399, 404 (5th Cir. 2000).  A federal district court "must reverse when [it]

conclude[s] that the state court decision applies the correct legal rule to a given set

of facts in a manner that is so patently incorrect as to be 'unreasonable.'"  Gardner

v. Johnson, 247 F.3d 551, 560 (5th Cir. 2001).  The focus of the "unreasonable

application" test of § 2254(d) is "on the ultimate legal conclusion that the state

court reached and not on whether the state court considered and discussed every

angle of evidence."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002) (en banc)

(per curiam).

Finally, "[t]he AEDPA requires that [the Court] presume correct the state court's findings of fact unless the petitioner 'rebut[s] the presumption of correctness by clear and convincing evidence.'"  <u>Morrow</u>, 367 F.3d at 315 (quoting 28 U.S.C.  § 2254(e)(1)); <u>see</u> <u>also</u> <u>Jackson v. Johnson</u>, 150 F.3d 520, 524 (5th Cir. 1998).  The presumption of correctness is accorded to adjudications made by a state court during review of a petitioner's state petition for habeas corpus relief.  <u>See</u> <u>Morrow</u>, 367 F.3d at 315.  The burden to rebut the presumption of correctness remains on petitioner even if the state "hearing was a 'paper' hearing and may not have been full or fair."  <u>Id.</u> (citing <u>Valdez v. Cockrell</u>, 274 F.3d 941, 950-51 (5th Cir. 2001)).  The Fifth Circuit has stated that the presumption of correctness also applies to mixed questions of law and fact.  <u>Valdez</u>, 274 F.3d at 948 n.11 ("The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact.") (citations omitted).  Findings of fact may be implied from conclusions of law.  <u>See</u> <u>Goodwin v. Johnson</u>, 132 F.3d 162, 183-84 (5th Cir. 1997).

**B.**     **Motion for Summary Judgment Standard of Review.**

Rule 56 of the Federal Rules of Civil Procedure applies to federal habeas corpus cases.  <u>Clark v. Johnson</u>, 202 F.3d 760, 764 (5th Cir. 2000).  Summary

judgment is appropriate when there is no disputed issue of material fact, and one party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A court must consider the record as a whole by reviewing all pleadings, depositions, affidavits, and admissions on file, and by drawing all reasonable inferences in favor of the party opposing the motion.  <u>Caboni v. Gen. Motors Corp.</u>, 278 F.3d 448, 451 (5th Cir. 2002).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>Williams v. Adams</u>, 836 F.2d 958, 960 (5th Cir. 1988).  The controverted evidence must be viewed in the light most favorable to the non-movant, and all reasonable doubts must be resolved against the moving party.  <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 888 (1990).

If the moving party makes the required showing, then the burden shifts to the non-movant to show that summary judgment is not appropriate.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986); <u>Fields v. City of S. Houston </u>, 922 F.2d 1183, 1187 (5th Cir. 1991).  The non-movant cannot rest on the mere allegations of the pleadings to sustain his burden, but must set forth

17

material controverted facts in the response to the motion for summary judgment.

Fed. R. Civ. P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49

(1986).  Summary judgment is proper if the non-movant fails to make a showing

sufficient to establish the existence of an element essential to his case on which he

bears the burden of proof.  ContiCommodity Servs., Inc. v. Ragan, 63 F.3d 438,

441 (5th Cir. 1995); Celotex, 477 U.S. at 322-23.

## VI.  DISCUSSION

**A.     Application of AEDPA's Deference to Petitioner's Claims.**

To the extent petitioner raised similar claims in his state application for

habeas relief, Texas state courts have already considered and rejected petitioner's

claims.  Ex parte Harms, App. No. WR-63,249-01, at cover.  The Texas Court of

Criminal Appeals denied his state habeas application without written order based

on the findings of the trial court.  Id.  This denial of petitioner's application, even

though it does not contain a written opinion, is not silent or ambiguous.  See Ex

parte Torres, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (holding a "denial"

signifies an adjudication on the merits).  It is a decision on the merits and is

entitled to the AEDPA's deference.  28 U.S.C. § 2254(d); see also Neal v. Puckett,

239 F.3d 683, 686 (5th Cir. 2001) (in the context of federal habeas proceedings,

"adjudication 'on the merits' is a term of art that refers to whether a court's

18

disposition of the case was substantive").

Thus, deference to the state court decision is mandated by § 2254(d).  See Morrow, 367 F.3d at 313.  Petitioner is not entitled to federal habeas relief unless he can demonstrate that the state court's adjudication on his claims was "contrary to, or involved an unreasonable application, of clearly established federal law" or was "based on an unreasonable determination of the facts."  28 U.S.C. § 2254(d).

**B.      Petitioner's Allegation That Dr. Kutnick's Report Was False.**

Most of petitioner's claims, as well as petitioner's request for an evidentiary hearing, are founded upon a factual allegation that Dr. Kutnick, who testified for the state, submitted a false report and committed perjury while testifying at petitioner's trial.  See e.g., (D.E. 1); (D.E. 24, at 5-10).  As this allegation is a decisive factor in evaluating the merits of nearly all of his claims, it is best to address at the outset petitioner's factual allegation that Dr. Kutnick's report contained false information.

Dr. Kutnick evaluated petitioner on October 28, 2003, which "consisted of interviewing the defendant, reviewing a number of records, and having a brief phone conversation with the district attorney."  State v. Harms, Clerk's Summary at 70.  Dr. Kutnick's twelve-page report contains a thorough statement of the facts underlying the incident and the months preceding the incident, and petitioner

19

disputes the truthfulness of the last sentence of the following paragraph:

> Further police offense reports relate the ex-wife
> stated Mr. Harms told her he was going to take some kind
> of action against her.  He wanted her to break up with her
> boyfriend.  He told his ex-wife he was so distraught he
> didn't know what he might do.  He told her if he had to
> die, she would not survive either.  He also had written her
> letters where he reminded her he did have a gun.  She
> also related Mr. Harms' friend, El Byron, [sic] had found
> [petitioner] in a drunken insane state, making threats of
> violence towards Mr. Kipp and herself.  The police were
> called and he was taken to Memorial Hospital.  <u>At that
> time, he apparently stated he will destroy himself but he
> will not go down alone.  Others would be destroyed
> along with him.</u>

<u>Id.</u> at 72 (emphasis added).  Dr. Kutnick made this statement based on a February

2003 police report.  <u>See</u> <u>Ex parte Harms</u>, App. No. WR-63,249-01, at 66.

Petitioner's friend El Byrom had found petitioner in a "drunken condition[,]

making threats of violence."  <u>Id.</u>  His threats were in a phone message petitioner

had left his ex-wife earlier in the evening.  <u>Id.</u>  Petitioner's argument is that he did

not make this statement to police, and that no solid proof he made the statement

exists.  <u>See</u> (D.E. 24 at 6-7).

Petitioner asserts that Dr. Kutnick "claim[ed] that Harms made such remarks

in the presence of the Corpus Christi police."  <u>Id.</u> at 6.  He further argues that "he

did not say that Harms allegedly used threatening words at a different time and

place."  <u>Id.</u> at 7.  He alleges that Dr. Kutnick misconstrued the police report

because "he wanted to convey the impression that Harms had said those threatening remarks in the presence of police officers, thus giving apparent credibility to the words." Id.

Neither Dr. Kutnick's report, nor the trial evidence suggest that Dr. Kutnick attempted to argue that petitioner had made an overt threat in the presence of police. Furthermore, the police report does contain the statements by petitioner. Finally, Dr. Kutnick was simply telling the trial court the materials and background upon which he based his report.

Finally, petitioner raises no new facts that might overcome the presumption of correctness to which the state court's factual findings on this issue are entitled. On state habeas review, the Texas Court of Criminal Appeals denied petitioner's application without written order based on the findings of the trial court. Ex parte Harms, App. No. WR-63,249-01, at cover. The trial court found the assertions contained in the State's answer to be correct. Id. at 71. In its answer, the State included affidavits from petitioner's counsel and the chief prosecutor, both of which negate petitioner's allegation that Dr. Kutnick's report contained false statements. Id. at 40-45. The state court's factual findings that there was not false information in Dr. Kutnick's report and that Dr. Kutnick did not commit perjury are entitled to deference from this Court, and petitioner has not presented any

information to overcome the presumption of correctness to which the state court's factual findings are entitled.

**C.     Petitioner's Claims of Ineffective Assistance of Counsel.**

Petitioner claims that he received ineffective assistance of counsel at his trial.  (D.E. 1, at 7).  First, he claims that his counsel failed to impeach Dr. Kutnick's testimony.  Id.  Second, he claims that counsel had a conflict of interest. Id.  Third, he claims that counsel failed to detect and properly investigate perjury by Dr. Kutnick and prepare an adequate defense.  (D.E. 25, at 13-15).  Fourth, petitioner claims that counsel failed to interview police officers and call them as witnesses.  (D.E. 24, at 13).  Finally, petitioner claims that counsel should have called Dr. Praderio and Captain McConnelly as witnesses.  Id.  Petitioner claims that the state court's adjudication of his ineffective assistance of counsel claims was contrary to Strickland v. Washington, 466 U.S. 668 (1984).

**1.     Standard of Review Pursuant to Strickland v. Washington.**

The Fifth Circuit has determined that "under AEDPA a state court decision rejecting a *Strickland* claim must be accepted unless it was an unreasonable application of its teaching."  Granados v. Quarterman, 455 F.3d 529, 534 (5th Cir.), cert. denied, 127 S. Ct. 732 (2006).  To prevail on a claim of ineffective assistance of counsel, a state prisoner seeking federal habeas corpus relief bears the burden of

showing that: (1) counsel's performance was deficient, and (2) that the deficient performance resulted in actual prejudice.  <u>Strickland</u>, 466 U.S. at 687.  In order to show counsel's performance was deficient, petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  <u>Id.</u>  He must demonstrate that counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards.  <u>See</u> <u>Little v. Johnson</u>, 162 F.3d 855, 860 (5th Cir. 1998).

Counsel's challenged conduct should be evaluated from the perspective of counsel at the time the conduct occurred.  <u>Strickland</u>, 466 U.S. at 690.  Due to the difficulties inherent in engaging in this analysis without being tainted by "the distorting effects of hindsight," a court's review should be highly deferential to counsel.  <u>Id.</u> at 689.  The reviewing court must give great deference to counsel's performance, strongly presuming that counsel has exercised reasonable professional judgment.  <u>Id.</u> at 690; <u>see also</u> <u>Romero v. Lynaugh</u>, 884 F.2d 871, 876 (5th Cir. 1989) (there is a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance).

The Fifth Circuit has explained that due to "the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit is careful not

to second guess legitimate strategic choices."  Yohey v. Collins, 985 F.2d 222, 228

(5th Cir. 1993).  In addition, "[a] conscious and informed decision on trial tactics

and strategy cannot be the basis for constitutionally ineffective assistance of

counsel unless it is so ill chosen that it permeates the entire trial with obvious

unfairness."  Johnson v. Dretke, 394 F.3d 332, 337 (5th Cir. 2004) (citations

omitted).  However, a reviewing court need not consider the deficiency prong if it

concludes that petitioner has failed to show actual prejudice.  Strickland, 466 U.S.

at 697; Amos v. Scott, 61 F.3d 333, 348 (5th Cir. 1995).

Under the second prong of the Strickland two-part test, petitioner may not

simply allege, but must affirmatively prove actual prejudice, resulting from the

ineffective assistance of counsel.  Strickland, 466 U.S. at 693.  Thus, he must

affirmatively show that his counsel's actions deprived him of a fair trial.  See

Czere v. Butler, 833 F.2d 59, 63-64 (5th Cir. 1987).  Prejudice results when "there

is a reasonable probability that, but for counsel's unprofessional errors, the result

of the proceedings would have been different."  Strickland, 466 U.S. at 694; see

also Lockhart v. Fretwell, 506 U.S. 364, 372 (1993) (habeas petitioner must show

that the trial result was unreliable, or the proceeding was fundamentally unfair due

to counsel's deficient performance).

Petitioner has the burden of proof under the Strickland test.  See Carter v.

24

Johnson, 131 F.3d 452, 463 (5th Cir. 1997) (holding burden of proof is on

petitioner in federal habeas proceeding).  He must establish "actual prejudice as a

result of his counsel's ineffectiveness."  Moody v. Johnson, 139 F.3d 477, 482 (5th

Cir. 1998) (citations omitted).  In addition, conclusory allegations of ineffective

assistance of counsel do not give rise to a constitutional claim for federal habeas

relief.  See Miller v. Johnson, 200 F.3d 274, 282 (5th Cir. 2000) ("Because

[petitioner] failed to set forth the nature of *any* of the errors trial counsel

purportedly failed to preserve and did not assert any resulting prejudice, the district

court properly determined that these three claims of ineffective assistance were

conclusory.") (italics in original).  The Fifth Circuit has further held that "'[i]n the

absence of a specific showing of how these alleged errors and omissions were

constitutionally deficient, and how they prejudiced [petitioner], ... we [can find] no

merit to these [claims].'"  Id. at 282 (quoting Barnard v. Collins, 958 F.2d 634, 642

(5th Cir. 1992)).  Finally, in order to prove that he is entitled to federal habeas

relief due to ineffective assistance of counsel, petitioner must overcome the

presumption of correctness to which the state court's findings are entitled.  See

Schaetzle v. Cockrell, 343 F.3d 440, 444 (5th Cir. 2003) ("It bears repeating that

the test for federal habeas purposes is *not* whether [petitioner made a showing

under *Strickland*, but] ... whether the state court's decision-that [the petitioner] did

25

*not* make the *Strickland*-showing-was contrary to, or an unreasonable application

of, the standards, provided by the clearly established federal law (*Strickland*), for

succeeding on his IAC claim.") (italics in original).

### 2. Petitioner's Claim That Counsel Failed to Properly Cross-Examine Dr. Kutnick.

Petitioner claims that his counsel "failed to adequately investigate, develop

or present impeachment evidence" relating to Dr. Kutnick.  (D.E. 1, at 7); (D.E. 24,

at 16).  He argues that "[d]espite his client's urging, [counsel] refused to have

Kutnick's Psychological Evaluation entered into the court record so that it could be

refuted by cross-examination in open court."  Id.  Petitioner contends that report

was later entered into evidence by the prosecution.  Id.  However, the record

reflects that the report was actually entered before defense counsel's cross-

examination of Dr. Kutnick.  5 R.R. 84-85.

The basis for this ineffective assistance of counsel claim is petitioner's belief

that Dr. Kutnick's report was inaccurate because it contained a statement that

petitioner had made threats to harm others and himself.  See generally (D.E. 1, at

7); (D.E. 24); (D.E. 25); (D.E. 31).  However, the trial evidence and testimony

establishes that Dr. Kutnick's report was not inaccurate and that petitioner had

made threats to harm himself and others.  A police report indicates that on

February 14, 2003, petitioner said:  "I'll destroy myself.  But I won't go down

alone[,] others will be destroyed along [with me]." Ex parte Harms, App. No. WR-63,249-01, at 66.

As Dr. Kutnick's report did not contain false statements, petitioner has failed to show that his counsel's performance was deficient, or that if counsel had cross-examined Dr. Kutnick regarding the report, there was a reasonable probability that the outcome of petitioner's trial would have been different.  Furthermore, petitioner has failed to show that the state court's adjudication of his claims relating to the purportedly "false report" was unreasonable or contrary to federal law.

It is respectfully recommended that petitioner's claim that counsel rendered ineffective assistance by failing to properly cross-examine Dr. Kutnick is without merit.

**3.     Petitioner's Claim That Counsel Had a Conflict of Interest.**

In both his state application for habeas relief and this federal petition, petitioner has claimed that his counsel had a conflict of interest because he was previously employed by the Corpus Christi District Attorney's Office and had a social relationship with Dr. Kutnick's son.  (D.E. 1, at 7); Ex parte Harms. App. No. WR-63,249-01, at 17-18.

The Supreme Court has explained that a defendant's right to effective

assistance of counsel includes the right to an attorney who does not have an actual conflict of interest. Strickland, 466 U.S. at 692. The Fifth Circuit has stated that "[a] conflict [of interest] exists when defense counsel places himself in a position conducive to divided loyalties." United States v. Carpenter, 769 F.2d 258, 263 (5th Cir. 1985) (citation omitted); accord United States v. Infante, 404 F.3d 376, 391 (5th Cir. 2005). The Fifth Circuit has determined that the standard in Strickland best addresses attorney "breaches of loyalty outside the multiple representation context." Beets v. Scott, 65 F.3d 1258, 1272 (5th Cir. 1995); accord United States v. Newell, 315 F.3d 510, 516 (5th Cir. 2002). The Beets court explained that "'[u]nder the Strickland standard, breach of an ethical standard does not necessarily make out a denial of the Sixth Amendment guarantee of assistance of counsel.'" Id. at 1271 (quoting Nix v. Whiteside, 475 U.S. 157, 166 (1986)). Petitioner must show a denial of effective assistance and that prejudice resulted from counsel's conflict of interest. Id. The Fifth Circuit has stated that even if the Supreme Court's standard enunciated in Cuyler v. Sullivan, 446 U.S. 335 (1980), rather than Strickland v. Washington, were applied to evaluate claims of conflict of interest outside of the context of multiple representation, "[i]n addition to actual conflict, petitioner must show adverse effect, meaning that 'some plausible defense strategy or tactic might have been pursued but was not, because of the conflict of

interest.'" <u>Hernandez v. Johnson</u>, 108 F.3d 554, 560 (5th Cir. 1997) (citation omitted) (assuming *arguendo* in a case similar to petitioner's that the <u>Cuyler</u> standard applied but specifically restating that <u>Cuyler</u> is limited to actual conflicts resulting from an attorney's representation of multiple defendants).  Finally, "[m]ere speculation about a conflict [] is insufficient to establish ineffective representation." <u>United States v. Soudan</u>, 812 F.2d 920, 925-26 (5th Cir. 1986) (per curiam) (citation omitted).

Petitioner "must show that counsel's errors fell below an objective standard of reasonableness and prejudiced his case." <u>Moreland v. Scott</u>, 175 F.3d 347, 349 (5th Cir. 1999) (citing <u>Strickland</u>, 466 U.S. at 694) (addressing an allegation of ineffective assistance of counsel where petitioner claimed attorney had a conflict of interest due to attorney's potential employment with district attorney's office). Petitioner contends that counsel's prior employment with the District Attorney's office creates a conflict of interest, but provides no specific reason why he believes counsel's prior employment creates an actual conflict, or why he believes that counsel's prior employment amounts to assistance that falls below an objective standard of reasonableness.  The Fifth Circuit has repeatedly determined that even if defense counsel was not only previously employed as a prosecutor, but also prosecuted the defendant in prior cases, a conflict does not necessarily exist.  <u>See</u>

Hernandez, 108 F.3d at 561.  Petitioner has not presented any facts that suggest

that counsel remained loyal to the district attorney's office and was not a zealous

advocate.

Petitioner also contends that his counsel had a conflict of interest arising

from his friendship with Dr. Kutnick's son, and was less inclined to thoroughly

cross-examine Dr. Kutnick because of the friendship.  (D.E. 1, at 7).  Not only has

petitioner failed to present anything more than mere speculation that counsel's

friendship with Dr. Kutnick's son may have influenced his representation of

petitioner, but his allegation is refuted by the record, which shows that his counsel

did in fact zealously cross-examine Dr. Kutnick.  See 5 R.R. 86-93.

Finally, petitioner has failed to show that the state court's adjudication of his

claim that counsel had a conflict of interest was unreasonable or contrary to federal

law.  In his state habeas application, his trial counsel addressed the conflict of

interest claim in an affidavit:

> Mr. Harms claims I had a conflict of interest
> because of my prior employment with the Nueces County
> District Attorney's Office, the agency that prosecuted
> this case.  A review of the record shows that I cross-
> examined Dr. Kutnick vigorously on such issues that
> include, but are not limited to, Dr. Kutnick's lack of
> personal knowledge, subjectivity in the field of
> psychiatry, a perceived bias between Dr. Kutnick and the
> prosecutor's office, the failure to review all records
> available, lack of time spent interviewing Mr. Harms, and

previous diagnoses of Mr. Harms by other mental-health
experts.

Ex parte Harms, App. No. WR-63,249-01, at 42.  The state court found counsel's

statements to be true, and denied petitioner habeas relief.  Id. at cover.  Petitioner

has not presented any evidence to overcome the presumption of correctness to

which the state court's factual findings are entitled, nor has he proven that the state

court failed to adjudicate his claim in accordance with Strickland.

It is respectfully recommended that petitioner's claim that his counsel

rendered ineffective assistance because of a conflict of interest is without merit.

### 4.     Petitioner's Claim That Counsel Failed to Properly Investigate Perjury by Dr. Kutnick and Prepare an Adequate Defense.

Petitioner claims that his counsel failed to properly investigate perjury by

Dr. Kutnick and prepare an adequate defense.  (D.E. 25, at 13-15)  The trial record

is replete with documentation of threats by petitioner in the months leading up to

the attack that he might harm others and himself.  See e.g., Ex parte Harms, App.

No. WR-63,249-01, at 66; Clerk's Summary at 99.  Thus, petitioner has failed to

prove that Dr. Kutnick's report contained any false statements.  More important, he

cannot show that but for his counsel's failure to investigate perjury that did not

exist, the outcome of the trial would have been different.  He has failed to show

that his counsel's performance was deficient, or that any prejudice resulted.

Finally, he has failed to show that the state court's determination that Dr. Kutnick did not commit perjury was contrary to or an unreasonable application of federal law.

It is respectfully recommended that petitioner's claim that counsel failed to properly investigate perjury by Dr. Kutnick and prepare an adequate defense based on such alleged perjury is without merit.

### 5.    Petitioner's Claim That Counsel Failed to Interview Police Officers and Call Them as Witnesses.

Petitioner claims that his counsel should have interviewed the police officers who arrested him in February 2003 and secured their testimony that he did not make statements to them that he would harm himself or others.  (D.E. 24, at 13). He argues that the officers should have been called to refute Dr. Kutnick's false report.  Id.  However, Dr. Kutnick's statement in his report that petitioner had "apparently" made threatening statements was not false, and the officers that petitioner believes counsel should have called as witnesses in his defense were the officers who investigated an incident where petitioner was found in an "insane drunken state."  Ex parte Harms, App. No. WR-63,249-01, at 66.

Petitioner has not presented any affidavits or other evidence to support his contention that the police officers would have testified favorably on his behalf. "'[H]ypothetical or theoretical' testimony will not justify the issuance of a writ...."

Martin v. McCotter, 796 F.2d 813, 819 (5th Cir. 1986) (citation omitted).

Furthermore, "'the presentation of testimonial evidence is a matter of trial strategy

and ... allegations of what a witness would have testified are largely speculative.'"

Coble v. Dretke, 444 F.3d 345, 350 (5th Cir. 2006) (citations omitted).  Finally,

"'[c]omplaints of uncalled witnesses are not favored.'"  Id. (citations omitted).

Counsel's failure to call witnesses who, even if they would attest to petitioner

never making any threatening statements while in their presence, may also have

testified how distraught petitioner was over Ms. McCoin, about his history of

attempts to contact Ms. McCoin and Mr. Kipp, friends' concern for petitioner,

neighbors seeing petitioner ride his bike by Mr. Kipp's house prior to the night

when they were attacked, and any other number of damaging statements, cannot be

seen as an unreasonable trial strategy.

It is respectfully recommended that petitioner's claim of ineffective

assistance of trial counsel due to trial counsel's failure to call the two police

officers as witnesses is without merit.

## 6.    Petitioner's Claim That Counsel Failed to Call Dr. Praderio as a Witness.

Petitioner claims that his counsel should have called Dr. Praderio as a

witness to testify that petitioner suffered from "substantial disorientation,

dissociation with reality, amnesia, and a myriad of other synptoms [sic] regarding

suicidal behavior, which can have a profound inhibiting effect upon the ability to think and act clearly and purposefully." (D.E. 24, at 13).

Petitioner has presented no affidavit or other evidence to support his contention that Dr. Praderio would have testified favorably on his behalf. See Martin, 796 F.2d at 819; Coble, 444 F.3d at 350 (citations omitted). Dr. Praderio's February 2003 report was admitted into evidence. State v. Harms, Clerk's Summary at 233.

Petitioner's contention that Dr. Praderio, who only examined petitioner following the February 2003 events, should have been called to testify at trial regarding petitioner's mental state, is also inconsistent with his argument that his actions and threatening statements he made in February 2003 should have had no bearing on the jury's assessment, and now this Court's assessment, of the events of June 2003. He has presented no valid reason why this Court should be persuaded he is deserving of having his February 2003 mental state and statements be considered for one purpose, but not for another that is less favorable. Regardless, Dr. Praderio's report was available to the jury, and petitioner has not presented any evidence that Dr. Praderio would have expanded upon his findings by testifying favorably for petitioner.

It is respectfully recommended that petitioner's claim that he received

ineffective assistance of counsel because his counsel failed to call Dr. Praderio as a

witness is without merit.

### 7.   Petitioner's Claim That Counsel Failed to Call Captain McConnelly as a Witness.

Petitioner claims that his counsel erred by not calling Captain McConnelly

as a witness to testify that the reason the firearm was held by the police was not so

that he could not use it, but instead, that he "wanted the police to take custody of

the firearm because of McCoin's violent history."  (D.E. 24, at 16-17).  In his state

habeas application, his counsel addressed this argument in an affidavit:

> In his addendum to ineffective assistance of counsel, Mr. Harms claims I failed to investigate exculpatory evidence regarding the taking of a handgun from his residence before the verdict offense was committed.  Ms. McCoin took the weapon.  And, prior to the that time, [sic] when Mr. Harms and Ms. McCoin lived in Colorado, Mr. Harms claims that Ms. McCoin threatened to kill him.  I did discover this alleged prior threat before Mr. Harms' trial in this case.  However, once again, Mr. Harms does not paint a complete picture, because Mr. Harms fails to address a police report by Officer Schultz dated February 20, 2003 (Case No. 03-01028) wherein Eleanor McCoin calls the police to turn over the gun in question to the police because she was fearful that Mr. Harms would use the weapon on her. Most importantly, Mr. Harms' argument fails to allege facts which would give rise to an affirmative defense.

Ex parte Harms, App. No. WR-63,249-01, at 42-43 (emphasis added).  Both the

state trial court and the Texas Court of Criminal Appeals adopted the State's

assertions as true.  Id. at 71, at cover.  Petitioner has presented no evidence to overcome the presumption of correctness to which the state court's factual findings on this issue are entitled.

Petitioner fails to present a compelling argument that Captain McConnelly's testimony would have substantially supported his defense, and he also fails to present any affidavit or other evidence that indicates that Captain McConnelly would have testified favorably.  See Martin, 796 F.2d at 819;  Coble, 444 F.3d at 350 (citations omitted).

Furthermore, petitioner has failed to show that the state court's adjudication of this claim was unreasonable or contrary to federal law.  Accordingly, it is respectfully recommended that petitioner's claim that he received ineffective assistance of counsel because his counsel failed to call Captain McConnelly as a witness is without merit.

**D.      Petitioner's Claim That Prosecutor Allowed Perjured Testimony.**

Petitioner claims that the prosecution knowingly allowed Dr. Kutnick to make false statements.  (D.E. 1, at 7); (D.E. 24, at 9-10).

**1.      Standard of Review.**

The Supreme "Court has recognized that prosecutorial misconduct may 'so infec[t] the trial with unfairness as to make the resulting conviction a denial of due

36

process.'" <u>Greer v. Miller</u>, 483 U.S. 756, 765 (1987) (quoting <u>Donnelly v.</u>

<u>DeChristoforo</u>, 416 U.S. 637, 643 (1974)).  In order for prosecutorial misconduct

to result in a constitutional violation that establishes a habeas claim, "the

prosecutorial misconduct must be 'of sufficient significance to result in the denial

of the defendant's right to a fair trial.'"  <u>Id.</u> (quoting <u>United States v. Bagley</u>, 473

U.S. 667, 676 (1985)).  A petitioner has the burden of showing the prosecutor's

action infected the trial with such unfairness that the conviction resulted from a

denial of due process.  <u>Kutzner v. Johnson</u>, 242 F.3d 605, 609 (5th Cir. 2001)

(citations omitted).  The Fifth Circuit has determined that in order for a petitioner

to prevail on a claim that the state has denied him due process by knowingly using

perjured testimony, or allowing untrue testimony to go uncorrected, the petitioner

must prove that: "(1) the testimony was actually false, (2) the state knew it was

false and (3) the testimony was material."  <u>Faulder v. Johnson</u>, 81 F.3d 515, 519

(5th Cir. 1996) (citation omitted).

### 2.    Petitioner's Claim Is Without Merit.

First, petitioner cannot prove that Dr. Kutnick's testimony was actually

false.  The crux of his argument is that Dr. Kutnick incorrectly noted that petitioner

made threatening statements to police, and that Dr. Kutnick incorrectly testified to

that effect at trial.  Dr. Kutnick's report was based on a review of police reports

and available records as well as an examination of petitioner.  Dr. Kutnick relied

on a police report with a threat by petitioner against his ex-wife and her boyfriend

in February 2003.  See Ex parte Harms, App. No. WR-63,249-01, at 66.  Even if

petitioner could establish that Dr. Kutnick's testimony was conflicting or

inconsistent, it would be insufficient to establish perjury.  See Kutzner, 242 F.3d at

609 (citation omitted).

     Second, petitioner has not presented any evidence to indicate that the state

knowingly used perjured testimony.  There is no evidence that the state had any

reason to suspect perjury.  In petitioner's state habeas application, the chief

prosecutor submitted an affidavit addressing petitioner's perjury allegation:

> Applicant alleges the State knowingly used
> perjured testimony to convict him.  Further, he contends
> the State was aware of the perjury by its main witness,
> Dr. Joel Kutnick and that "the impeachment evidence"
> was in the State's files....  According to Applicant, the
> State was aware of the falsehood, yet it used the
> perjurious statements to unjustly convict him.
>
> Neither I nor any other person at the Nueces
> County District Attorney's Office either suppressed or
> failed to disclose any evidence, favorable or otherwise, to
> defense counsel.  Neither I nor any person at the Nueces
> County District Attorney's Office knowingly used any
> perjurious testimony from any witness, including Dr.
> Kutnick.  Any impeachment evidence, which the Nueces
> County District Attorney's Office had in its files related
> to Applicant's case, was disclosed in a timely manner to
> Applicant's defense counsel.  Neither I nor any person at

> the Nueces County District Attorney's Office was aware
> that Dr. Kutnick committed perjury; therefore, there was
> no testimony to correct.  And, the State used no perjured
> testimony by any witness to convict Applicant.

Ex parte Harms, App. No. WR-63,249-01, at 43-44.  Both the state trial court and

the Texas Court of Criminal Appeals adopted the State's assertions as true.  Id. at

71, at cover.  Petitioner has presented no evidence to overcome the presumption of

correctness to which the state court's factual findings on this issue are entitled.

Third, petitioner has not shown that even if he could prove that Dr.

Kutnick's statements were false and the State knew the statements to be false, that

they were material to his conviction.  Ample evidence existed for a jury to find that

petitioner committed the offense in question.  Both Mr. Kipp and Ms. McCoin

testified that petitioner entered Mr. Kipp's home and stabbed them. 3 R.R. 24-29,

155-58.  The police arrived to find petitioner in the home, still struggling with Mr.

Kipp.  Id.  Finally, the record contains numerous examples that show petitioner's

dangerous obsession with his ex-wife.  Even without Dr. Kutnick's testimony, it is

likely the jury would have convicted petitioner.

Furthermore, petitioner has not shown that the state court's adjudication of

this claim was unreasonable or contrary to federal law.  It is respectfully

recommended that petitioner's claim that the state knowingly used perjured

testimony to obtain the conviction is without merit.

39

**E.    Petitioner's Claim That Prosecution Withheld Exculpatory Evidence.**

Petitioner claims that the prosecution withheld exculpatory evidence by not

informing the defense that Dr. Kutnick's testimony was perjured.  (D.E. 24, at 8-9).

**1.    Standard of Review Pursuant to Brady v. Maryland.**

In Brady v. Maryland, the Supreme Court held "that the suppression by the

prosecution of evidence favorable to an accused upon request violates due process

where the evidence is material either to guilt or to punishment."  373 U.S. 83, 87

(1963).  The prosecution "need not disgorge *every* piece of evidence in its

possession ... [but] has an affirmative duty to disclose to the defense evidence that

is favorable to the accused and material to guilty."  Rector v. Johnson, 120 F.3d

551, 558 (5th Cir. 1997) (citing Bagley, 473 U.S. at 674) (emphasis in original).

Brady applies to both impeachment and exculpatory evidence.  Hudson v. Whitley,

979 F.2d 1058, 1066 (5th Cir. 1992) (per curiam) (citing Bagley, 473 U.S. at 676).

In addressing a Brady claim, the Fifth Circuit has explained that:

> A defendant must prove the following to establish a
> Brady violation: (1) the prosecution suppressed evidence,
> (2) the suppressed evidence was favorable to the defense
> and (3) the suppressed evidence was material to the
> defense.  The test for materiality is whether there is a
> "reasonable probability that, had the evidence been
> disclosed to the defense, the result of the proceeding
> would have been different."  A reviewing court may
> consider any adverse effects the prosecutor's failure to
> release information might have had on the defendant's

preparation and presentation of the case.

Derden v. McNeel, 938 F.2d 605, 617 (5th Cir. 1991) (citations omitted). The

Fifth Circuit also requires that petitioner show that "discovery of the allegedly

favorable evidence was not the result of a lack of due diligence." Rector, 120 F.3d

at 558 (citations omitted). The state does not have a duty to disclose information

that is available from other sources. Id. at 559 (citation omitted). In order to

obtain relief on a Brady claim, petitioner must "demonstrate a reasonable

probability that, but for the error, 'the result of the proceeding would have been

different.'" Barrientes v. Johnson, 221 F.3d 741, 756 (5th Cir. 2000) (citation

omitted) (stating that Brady claims are reviewed using the "reasonable probability"

standard).

### 2.     Petitioner's Claim Is Without Merit.

Petitioner has not shown that Dr. Kutnick's statements were false, and even

if the statements were false, has not shown that the state had any reason to know

that the statements were false. First, he cannot show that the state suppressed

evidence regarding Dr. Kutnick's truthfulness. In petitioner's state habeas

application, the chief prosecutor submitted an affidavit addressing this claim and

denying that any exculpatory evidence was withheld. Ex parte Harms, App. No.

WR-63,249-01, at 43-44. Both the state trial court and the Texas Court of

Criminal Appeals adopted the State's assertions as true.  Id. at 71, at cover.

Petitioner has presented no evidence to overcome the presumption of correctness to

which the state court's factual findings on this issue are entitled.  Because he

cannot show that the prosecution knowingly suppressed evidence, he also fails to

show that evidence suppressed by the prosecution was favorable to his defense.

Finally, given that ample evidence supports the finding of petitioner's guilt, he has

not shown that the state's alleged failure to disclose that Dr. Kutnick's statements

were false was material to his defense.

Furthermore, petitioner has not shown that the state court's adjudication of

this claim was unreasonable or contrary to federal law.  It is respectfully

recommended that petitioner's claim that the state knowingly suppressed evidence

relating to the use of perjured testimony is without merit.

**F.    Petitioner's Claim That Ms. McCoin Committed Perjury Is Not
       Cognizable.**

Petitioner claims that Ms. McCoin, "repeatedly lied to the court."  (D.E. 24,

at 7).  He argues that because she could not produce the threatening letters that she

testified about in court, she lied about the letters existence.  Id.  However,

petitioner does not state, or attempt to show that the prosecution knowingly used

perjured testimony, which is required for a habeas petitioner to obtain relief for

perjury.  See Skipper v. Wainwright, 598 F.2d 425, 427 (5th Cir. 1979) (per

curiam) (citing <u>Giglio v. United States</u>, 405 U.S. 150 (1972)).

Accordingly, it is respectfully recommended that petitioner's claim that his ex-wife, Elinor McCoin, committed perjury fails to state a cognizable claim for habeas relief.

## G.   Petitioner's Request For an Evidentiary Hearing.

In his response to respondent's motion for summary judgment, (D.E. 31), petitioner renews his request for an evidentiary hearing.  However, he has failed to present evidence sufficient to prove he is entitled to an evidentiary hearing.  A petitioner who claims that a promise made pursuant to a plea agreement has been breached must present some evidence supporting his claim.  <u>See</u> <u>Harmason v. Smith</u>, 888 F.2d 1527, 1529 (5th Cir. 1989) (quotations omitted).  "Such indicia may include an affidavit from a reliable third party."  <u>Id.</u> (citation omitted).  The Fifth Circuit has explained that "[a] hearing in a habeas proceeding is required <u>only</u> when, *inter alia*, the record reveals a genuine factual dispute."  <u>Tague v. Puckett</u>, 874 F.2d 1013, 1015 (5th Cir. 1989) (emphasis added); <u>see</u> <u>also</u> <u>Murphy v. Johnson</u>, 205 F.3d 809, 815 (5th Cir. 2000) (discussing basis for evidentiary hearing).

It is respectfully recommended that petitioner has not presented indicia of the merit of his contentions, and that there is no genuine factual dispute that would

warrant an evidentiary hearing.

## VII.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the Fifth Circuit from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Although petitioner has not yet filed a notice of appeal, it is respectfully recommended that this Court nonetheless address whether he would be entitled to a certificate of appealability.  See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may sua sponte rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court.  Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability "may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable

jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).  This standard requires a § 2254 petitioner to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483).

As to claims that a district court rejects solely on procedural grounds, a petitioner must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (emphasis added).

Here, it is respectfully recommended that reasonable jurists could not debate the denial of petitioner's § 2254 petition on substantive or procedural grounds nor find that the issues presented are adequate to deserve encouragement to proceed. Miller-El, 537 U.S. at 327 (citing Slack, 529 U.S. at 484).  Accordingly, it is respectfully recommended that the Court find that petitioner is not entitled to a certificate of appealability as to his claims.

## VIII.  RECOMMENDATION

For the foregoing reasons, it is respectfully recommended that respondent's motion for summary judgment, (D.E. 16), be granted, and that petitioner's request for an evidentiary hearing, (D.E. 31, at 4), be denied, and that petitioner's petition for writ of habeas corpus be dismissed with prejudice.  It is respectfully recommended that petitioner be denied a certificate of appealability.

Respectfully submitted this 10th day of April 2007.

_____
BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(C); Rule 8(b) of the Rules Governing § 2254 Cases; Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 02-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).